Our third case this morning is No. 25-1371, Nielsen Company v. TVision Insights, Inc. Okay, Mr. Brazen. Good morning. Thank you, Your Honors, and may it please the Court. I'd like to start by explaining why the Board erred when it concluded that T.N. qualified as analogous art and why that error warrants reversal of the Board's decision. The Board determined that T.N. was analogous art under a reasonably pertinent theory, but TVision never presented a reasonably pertinent theory in its petition, nor did it raise it at any point throughout the IPR. Well, but you did. Yes, Your Honor, that's true, but we affirmatively disputed it and showed that T.N. was not reasonably pertinent. Is there anything that you didn't say that you would have said? Yes, Your Honor. Yes, Your Honor. Had we known what the panel was going to identify as the problem, we would have had an opportunity to provide additional evidence and document. Excuse me? What? We could have responded with evidence showing that the problem that they identified is not supported by the specification or is not how a person of ordinary skill.  That's not asked. Well, we have to look at the problem from the perspective of a person of ordinary skill in the art, and had our expert had a chance to address the specific problem that the Board identified, we could have done that with evidence and expert testimony. I don't see that in your brief you told us what evidence you would have submitted. That's correct. We did not, Your Honor. However, I would note that this Court in Qualcomm rejected that very argument. There, in the claim construction context, the Board didn't address a claim construction issue until the final decision, and this Court still said that they were deprived of an opportunity to present evidence on evidence and argument, whether documentary or expert, to support or rebut the construction that the panel reached. That's exactly the case here. Well, it's not exactly the case here because here you argued it. Yes, we did, Your Honor, but there's still the question of it being TVision's burden. Under both Magnum Oil and Sanofi Aventis, the petitioner still bears the burden of proving analogous art. They didn't do that here. They didn't raise it in their petition. They did that in prejudice because you raised it yourself. That goes to the APA issue, Your Honor, and while I still think there was prejudice because we were deprived of the opportunity to respond to the Board's specific theories, there's still the issue of TVision's burden, and here they have presented no evidence that the Board could have relied on to make its reasonably pertinent conclusion. I don't understand why they have to present evidence. I mean, the patent talks about various benefits from the invention, and the Board said they appropriately looked to prior art to solve one of the problems that was presented. What's the matter with that? I would again point you, Your Honor, to your decision in Magnum Oil and Sanofi Aventis where the Court said that the Board is not free to decide invalidity theories that were not presented by the petitioner. Again, that's getting into the APA issue. Yes, Your Honor, but I think it's relevant here to the burden. Put aside the APA issue for a moment. What's the matter with the Board's decision in identifying the problem that it did? It's not supported by substantial evidence. There was nothing in the petition for which it could have relied on, and if you look at the holding in Sanofi Aventis. Wouldn't it be the specification? Isn't that evidence, the specification? Yes, Your Honor, that's true. The problem with the specific problem identified with the Board. But that is evidence. Yes, it is, Your Honor, but it was not presented in the petition or during the IPR. And, again, looking at the holding in Sanofi Aventis, the Court said clearly that where the – in that case, the petitioner actually did present reasonably pertinent in its petition, and the Court still concluded that the Board was not free to reach the issue. Did they present a theory of the field of endeavor? No, they did not. But in that case, the patent owner also responded by putting a proper reasonably pertinent analysis in dispute, and the Court nonetheless said the Board could not reach the issue, and it erred by doing so, and that it lacked substantial evidence in its conclusion because there was nothing in the petition or the petitioner's papers that supported its finding. So under Sanofi Aventis, the Board was not free to reach the issue of reasonably pertinent, and its decision lacked substantial evidence. You're saying there was no presentation of a theory dealing with the field of endeavor? No, for reasonably pertinent. Field of endeavor was the only issue presented. However, no reasonable fact finder could conclude that TN is in the field of endeavor of the 243 patent. That's why this Court can reverse the Board's decision rather than remand. The 243 patent is in the field of audience measurement. It has an express disclosure in its background section of its specification that says that, and more importantly, all of its claims are directed to a system or method of audience measurement, and its only embodiment is an audience measurement device. It has no uses beyond the field of audience measurement. There is simply no basis to conclude that the 243 patent's field of endeavor is a broader general field of media analysis, as TVision has proposed. And there's no dispute that TN is not in the field of audience measurement. That was not argued by TVision below or on appeal, and the Board did not make that argument either. But I don't think that the patent's definition of the field of endeavor is binding, right? No, but you have to look to the structure and function of the claimed invention overall. And there's nothing in the patent that suggests that it has any applicability beyond the field of audience measurement. Its only use is for audience measurement, and again, every claim at issue is directed to audience measurement methods and systems. There's just nothing under this Court's test that would support a finding that a broader field of endeavor is applicable to the 243 patent. In this case, that allows the Court to reverse the Board's decision rather than remand, and it should in this case, because, again, the Board had the opportunity to reach this issue in its final written decision. It was fully briefed below. It was the only theory that was properly presented to the Board. During the hearing, the Board expressed some doubt, it seemed, about the proper field of endeavor and TVision's theory for the field of endeavor. And then in its final written decision, it simply chose not to address it, even though that was the theory that was at issue in the case. Nielsen's counsel made clear during the hearing that only the field of endeavor was at issue here. The Board did not dispute that during the hearing, and, in fact, it immediately pivoted back to the field of endeavor. So the Board had... An oral argument. Counsel said only issue. Counsel's... Field of endeavor. Yes, Your Honor. Counsel, and that's Appendix 334... Excuse me. 3349, I believe. And I will pull that for you. What's that page number? It is... Excuse me. Three... 3189, excuse me, and 90. Sorry, no, I was correct the first time. I apologize, Your Honors. 3349 to 50. 3249. 3349. 334. And this is an exchange with Nielsen's counsel and the Board where Nielsen's counsel indicates that only the field of endeavor is at issue in this hearing. Which one? I'll have to get the specific line number for you, Your Honor. I'll have to get back to you on the specific line. 3349, please. Counsel, could you pass the key? Yes. So at Lines 4 to 7, Ms. Bailey stated, first of all... Line 5, excuse me. First of all, they did not, Petitioner did not present a reasonably pertinent analysis, so we're just left with the field of endeavor. And then if you go down to Line 23, you'll see that the judge, rather than disputing that, turned immediately back to the question of the field of endeavor and did not suggest at any point that the reasonably pertinent test was in play in this IPR. So in this case, Your Honor, because that was the only theory in play and because no reasonable fact finder could conclude that TN is in the field of audience measurement, this Court should reverse. Unless there's any other questions on analogous art, I'd like to briefly address the independent flaws with the Court's obviousness analysis. Excuse me, the Board's obviousness analysis. There is no dispute here, Your Honors, that TN relies on pre-processed images that have all had their resolution reduced before any facial expression analysis occurs. That is simply not what is required by Claims 4 through 6. Claim 4 recites reducing the resolution of just a first image in order to obtain a reduced-resolution image. That reduced-resolution image is used to determine the orientation of a head. Claims 5 and 6 then say you take a second image from the original sequence of captured images of the media exposure environment, and you use those full-resolution images to do the actual facial analysis. TN's reliance on pre-reduced-resolution photos does not satisfy Claim 4. And when you would combine TN's teaching with T-Vision's primary references, the result would be systems that reduce the resolution of every image before doing any facial analysis, not what the Claim requires, which is reducing the resolution of just a first image in order to determine the orientation of a head, and then using a second regular image to do facial analysis. So the board erred because it did not properly consider TN's teachings as a whole. Instead, it said broadly, well, TN teaches that reducing the resolution of an image is known. Why wouldn't we apply that to the audience measurement to just reduce one image? And I think that's basically the equivalent of the board reading out a limitation of the claims. It's substituting TN's teaching, which has reduced the resolution of every image, and saying, well, we'll just use it to reduce one image. But that's not what TN teaches. And so they relied on T-Vision's expert testimony to supply a claim limitation without adequate support or basis to do so. Additionally, there would have been no motivation to combine the references as proposed by T-Vision. T-Vision relied on a problem, an alleged problem in the art, that some facial analysis systems were wasteful or resource-intensive. But they did not actually show that their prior arts facial analysis systems were wasteful. So there is... They don't have to be addressing the same problem that the patent identified. That's true, Your Honor, but under this court's decision in Arctic Cat, where they set forth their basis is there is a problem in the art, they then have to justify with evidence that the specific prior art they're relying on suffers from that problem. If their own prior art does not suffer from the problem that they've identified, then a person of ordinary skill would not have had any reason to go out and look for a solution. There's no problem to begin with. And since here there's no evidence to show that their primary references actually suffered from that problem, there's no reason to go out and search for a solution. And even if they did, there's a similar problem in that TN's teachings, even if applied, there's no evidence that would solve a problem or reduce the resources necessary to perform facial analyses. Again, we didn't get any evidence about the specific techniques that are being employed by the facial recognition systems of their primary references, and so we can't say what applying TN's technique to those systems would do. In short, there's just... The board's obviousness analysis failed at both stages, in concluding what TN teaches and in finding a motivation to combine. Unless there's any further questions, I'll reserve the rest of my time for rebuttal. Okay. Thank you, Your Honor. May it please the Court, Chris Potter for Appley T. Vision. One thing I did just want to point out briefly is the quote on appendix page 3349. That was Nielsen's counsel saying that the only issue left was the field of endeavor. And I would just note that the judge at the end in the questioning, she actually asked, well, isn't the board able to make its own determination on the analogous part? Basically, this exact issue is, the board wasn't stuck with just choosing between competing proposals. It could look at the evidence and make a decision. I'd like to start by going through the evidence, the substantial evidence that supports the reasonable pertinence finding by the board. What I would note with, start with, is their own brief, the blue brief at page two. That second paragraph, they admit that at the time of the invention, it was common for audience measurement systems to employ facial recognition to identify the people watching the program. And then the next sentence describes that these techniques required high resolution cameras to ensure the analyzed images had the resolution needed for accurate results. So even before they filed their patent, even under the field that they choose to stand by, audience measurement systems, they clearly encompassed facial recognition as well as image processing techniques. And this is consistent with the patent. If you turn to appendix page 103, we see the field of the disclosure. And it says, this disclosure relates generally to audience measurement and more particularly to methods and apparatus to capture images. And that's the title of the patent, methods and apparatus to capture images. At the bottom of column one, the last word going on to column two, it explains that additionally, some audience measurement systems identify people in the images via one or more identification techniques, such as, for example, facial recognition. And it's also important to note that Nielsen's expert agreed with our articulation of what is the media analysis level skill. If you turn to appendix page 1515, their expert, Dr. Saber, reproduced the level of skill that we proposed where we said it's media analysis. And on the next page of his declaration on 1516, he explains that he has specialization in media analysis, particularly pointing out to, in paragraph 29, that he developed face detection and facial feature extraction approaches. And this was the exact field of endeavor that we said TN is in. So, their expert agreed that media analysis includes facial detection. They admit that audience measurement systems, they're competing supposedly narrower field of endeavor, also included facial recognition. So we really struggled to see how the board didn't have substantial evidence to make the finding that art dealing with image processing and facial detection wouldn't be reasonably pertinent to a person dealing with the problems addressing the patent. And I would just also note Nielsen's own expert admitted he didn't even have expertise in audience measurement systems. So the board noted that on appendix page 22, noting it was a bit strange to say that the field of endeavor would be audience measurement systems and have an expert that has no expertise in that area. So I would just conclude that under their chosen field of measurement systems, it's clear it encompassed image processing and face detection analysis. Unless there are any questions on the reasonable pertinence arguments, I thought I would move on to the APA issue. So, core photonics is an important decision here because it makes clear, this court made clear, that reasonable pertinence and field of endeavor are both prongs to the same issue, analogous art, and that it's not a new issue to raise reasonable pertinence. So the reliance upon Qualcomm and these other cases is kind of inapplicable. And I think it's quite clear that given that the board relied on the facts that were alleged with respect to analogous art, that they can make that, that same evidence can support finding under reasonable pertinence or field of endeavor because it all goes to the single, unitary issue of analogous art. And as the court noted, they specifically briefed it. They specifically said in their patent owner response, I would point to appendix page 2060, they expressly said that patent owner addresses the second prong as well, referring to reasonable pertinent, and then provided about a page of argument. And what's notable here is their argument for why it wasn't reasonably pertinent just collapses into their argument that there's something called audience measurement systems that do not include facial recognition. So their arguments on the reasonable pertinence and our rebuttal of it would be the same, that clearly the audience measurement system art in this time period included facial recognition. Unless there are any questions on the APA issue, I thought I'd move on to the obviousness. So for obviousness, the standard review is substantial evidence. And as we heard, the board relied on express teachings from Tyann, as well as Dr. Dorman, TVision's expert, who explained the meaning and import of the art. That's more than enough evidence for the board to make its obviousness findings. And then on the motivation combined argument, I would just note that what the argument was was we explained how Tyann taught that by reducing the resolution of the images and applying facial recognition, we supplied a lot of evidence showing how doing this image resolution before doing the facial detection would reduce the amount of computations that would be needed to do without unduly reducing the accuracy of the technique. And there was a lot of argument about this. There was a lot of evidence presented on this. The board credited all of our testimony from our experts, as well as additional extrinsic evidence, to show that even if you do these additional calculations for reducing the resolution before doing the computation, that you had a net benefit of less computation. So the idea was Tyann taught this technique where you could reduce the resolution of the images, still do facial detection, the expert explained how that would reduce the amount of computational work, and the board credited. Now this wasteful part was the board's kind of shorthand after they recounted the arguments and credits, said, well, it would be wasteful to not use an approach that would reduce the amount of computation. This wasn't some new theory of wastefulness that the board created on their own. They just said, well, if you know that if you implement this technique, you do less work, a positive would see that it's less wasteful to adopt it. I believe I covered all the main points I wish to cover. I don't see anyone has any questions. Thank you, your honors. May it please the court, just a few quick points. First, core photonic should not apply here, and Sanofi Aventis should control. If T-Vision's counsel interpretation of core photonics was true, Sanofi Aventis would have come out the opposite way. Again, in Sanofi Aventis, like here, the patent owner had put its own interpretation of reasonably pertinent in play in its patent owner response, and it argued field of endeavor. The petitioner there actually advanced its own reasonably pertinent theory, but it was legally flawed. The court still said the board could not reach reasonably pertinent, even though it was raised by the petitioner, and even though the patent owner had also raised its own theory of reasonably pertinent. That is what should control here. Here, the petitioner did even less. They didn't raise it at all. It would be a strange outcome if a petitioner who at least attempts to make their showing, but does it incorrectly, precludes the board from reaching a decision, but a petitioner can just simply not make any showing, and the board is then free all of a sudden to make the decision on behalf of the petitioner. That's squarely contrary to Magnum Oil and St. Iventus. Second, the division's proposed identification of the problem and the board's problem as being image processing runs contrary to this court's decision in Donner at 1360. That case involved guitar pedals that had effects mounted on them. The board had concluded that the patent was directed to mounting effects on guitar panels, but this court recognized that that was already known. The patent itself said that. That is exactly the case here. There are no problems in image processing or facial analysis that the 243 patent is solving. As everyone agrees, the 243 patent is using known facial techniques. It's not improving on facial analysis. It's improving on audience measurement. The problems relate to the issue with illuminating of a light and making it less annoying to the audience members, and it does that by leveraging a facial analysis technique, but it does not improve on a facial analysis technique that was otherwise in need of solving. Lastly, to the field of endeavor, more particularly, as TVC noted, the field is generally related to audience measurement and more particularly to image processing. That is a narrowing statement. It narrows the field to audience measurement that involves facial recognition techniques. Even if that was not the case, again, the test is to look at the claims and the structure and function of the embodiment overall. Every single claim is directed to an audience measurement system and the only embodiment is limited to an audience measurement system. Thank you, Your Honors. Thank you.